NOT RECOMMENDED FOR PUBLICATION OR CITATION

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at ASHLAND

CIVIL ACTION NO. 07-CV-046-HRW

SHON DEMARCUS HICKS                                    PETITIONER

VS:                **MEMORANDUM OPINION AND ORDER**

BRIAN PATTON, Warden                                   RESPONDENT

**** **** **** **** ****

This matter is ripe for a decision on the petition herein, the Warden having responded with a Motion to Dismiss.

BACKGROUND

On April 23, 2007, Shon Demarcus Hicks, an individual incarcerated in the Federal Correctional Institution ("F.C.I."), in Ashland, Kentucky, filed the instant *pro se* petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241. In it, he first explains that in 2000, in the United States District Court for the Middle District of North Carolina, he pled guilty to certain drug crimes pursuant to a plea agreement and was sentenced to 172 months imprisonment.

Hicks alleges that after his arrival at prison, certain officers of the United States, as part of a joint drug task force, promised to bring a Rule 35(b) Motion for Reduction of Sentence to the trial court if he would assist in locating and prosecuting certain other drug dealers. However, after he accepted this offer and was of such assistance that convictions of three additional drug kingpins were obtained, the government purportedly breached the agreement and refused to bring the Motion. He claims that the government thereby violated his due process right to fundamental fairness; the Constitution's equal protection guarantee; and its contract clause. Hicks also asserts state claims

for breach of contract and fraud.

Upon screening the petition, this Court issued an Order in which it summarized the details

of his factual allegations as follows:

> [Hicks] admits that he was affiliated with major drug players and trafficking
> organizations in parts of North Carolina and elsewhere; and that his best friend and
> sister's ex-boyfriend was a key player named Tywun Dewayne McWilliams, known
> as "Wee-Wee" in the underworld. McWilliams is described as being involved not
> only in millions of dollars of crack and powder cocaine trafficking but also money-
> laundering activities.
>
> Petitioner Hicks alleges that after he arrived at prison, FCI-Butner in Butner,
> North Carolina, in August of 2000,[1] he was contacted by Trish Emerson of the North
> Carolina State Bureau of Investigations and John Roberts of the Cabarrus County
> (North Carolina) Sheriff's Department. They were both purportedly acting in a joint
> state and federal drug task force and were specifically interested in McWilliams, as
> well as certain Mexican importers and distributors.
>
> These officials and the petitioner purportedly came to an agreement which
> provided that the officials would see to it Hicks received a motion for a downward
> departure pursuant to Rule 35(b) "in exchange for information leading to the arrest
> of Tywun Dewayne McWilliams, his organization's resources, runners, enforcers,
> money-launderers, as well as violators of the Federal Gun Laws." When Petitioner
> suggested that the agreement be written down, Emerson allegedly stated that the
> officials would abide by their obligations and she, personally, would argue the
> motion on his behalf.
>
> Petitioner claims that he proceeded to reveal to the authorities the following
> information on McWilliams and two Mexican importers and distributors: "times,
> locations, amounts, who, what, where, and how those things progressed, including
> specific information on money-laundering locations and Federal Gun Law
> violations." Allegedly, he also revealed McWilliams' suppliers, other cohorts,
> employees, schedule, rendezvous points, and locations of cash. Further, he
> suggested ways that the drug lords were vulnerable to approach, and he agreed to
> testify against McWilliams and two Mexican kingpins named Hosea Ramierez and
> Fortino Serano.
>
> As a result of Hicks' actions, he claims, the officials obtained the arrest,
> indictment, and conviction of McWilliams. Additionally, on September 27, 2002,

---

[1] Attachments to the petition are sign-in sheets showing visits on August 9, 2000, and January 17, 2001. Exhibits B and C.

2

the first day of the scheduled trial of the Mexicans, he was present and prepared to testify against the Mexicans; he had arranged for his sister to testify; and his assistance in convicting McWilliams made McWilliams available to testify. According to the petitioner, when Ramierez and Serano realized that the three of them were there to testify, they decided to plead guilty. As further results from his efforts, he points out, the government was spared the cost of a trial for Ramierez and Serano and a major drug supply was stopped.

Hicks claims that although part of his agreement with authorities was to testify at trial, he could not perform the testimonial part because the Mexican defendants pled guilty before he could do so. However, he did all of the other things he had promised to do, he gave substantial assistance to the government, and he substantially complied with the agreement to the extent possible. In contrast, Emerson and Roberts are alleged to have failed to abide by their obligations, "hanging Hicks out to dry after he endangered the lives of himself and family, by Petitioner's appearance at the Ramierez and Serano trial."

Among the petitioner's exhibits is his own affidavit swearing to these events and more. . . . Sergeant Ralph A. Adams, II, confirmed Serano's guilty plea, admitted that the petitioner's information had been helpful to him (Adams) in the prosecution of Wee-Wee and others, and "stated that Affiant would be compensated with a downward departure for his cooperation with the Government." Further, the petitioner contends that once he got back to the prison and contacted his attorney, Gordon Widenhouse, his attorney left numerous messages for Emerson, Roberts, and Adams which were never returned.

Several attached letters between Hicks and Widenhouse show both of their efforts to follow up on the government's purported promise. A July 10, 2003 letter to Hicks (Ex. D) contains the information that Widenhouse had "finally" talked to the United States Attorney for the Western District of North Carolina, Gretchen Shappert. The attorney reports that Ms. Shappert told him that she talked to Trish Emerson, who said that no information from Hicks was used in prosecuting Ramierez and Sorano, but she also talked to Chuck Adams, who had told her that he did use some of the petitioner's information in prosecuting McWilliams.

Eventually, Hicks' attorney withdrew [Ex. I, dated September 22, 2004) and Ms. Shappert wrote directly to Hicks by letter dated May 10, 2005. She writes therein that she checked with Sgt. Adams, who said that the McWilliams case was developed with "information from numerous sources." Evidently Hicks had claimed that his cooperation with the government began as early as his arrest, because she also states that a Rule 35 motion must be predicated on post-sentencing cooperation. Further as to the desired motion, Ms. Shappert informs him of the following bar to her acquiescing to his request:

3

> . . . [B]ecause you were prosecuted in the Middle District of North Carolina, only the United States Attorney's Office for the Middle District of North Carolina can file a Rule 35 Motion on your behalf. My office does not have the authority to file a motion in a Middle District case. By e-mail, I notified Assistant United States Attorney Sandra Hairston, the Lead OCDETF prosecutor in the Middle District, that you contacted my office. I let her know that you were brought to the Western District of North Carolina as a prospective witness. As you know, you did not testify.

Record No. 6 (quoting from Ex. J, dated May 10, 2005). This Court noted that almost two years after receiving this letter, the Petitioner wrote a letter (Ex. K, dated March 15, 2007) about this matter to Ms. Hairston; and one month later, on April 23, 2007, Hicks filed the instant petition.

The Court's Order directed service of a copy of Hicks' petition on the Respondent.

<u>WARDEN'S RESPONSE</u>

The warden of F.C.I.-Ashland has responded with a Motion to Dismiss this proceeding for Petitioner's failure to state a claim upon which this Court may grant relief. Record No. 12.

Respondent argues that a request for reduction in sentence for post-sentencing substantial assistance is not appropriately brought under 28 U.S.C. § 2241, in the district in which the prisoner is incarcerated, but is a matter for the sentencing court under 28 U.S.C. § 2255. Further, this Court has so held in *Wingfield v. Patton*, E.D.Ky. No. 06-CV-171-HRW, 2007 WL 145468 (E.D. Ky. 2007) (slip copy), a copy of which he attaches to the Motion.

Nor, the warden contends, can the Petitioner utilize Section 2241 on the ground that his remedy via a Section 2255 motion is inadequate or ineffective to challenge the legality of his current detention, because he has not made the inadequate or ineffective showing necessary to do so, under the savings clause of Section 2255 and the law interpreting the statute, *Charles v. Chandler*, 180 F.3d 753, 756 (6th Cir. 1999) and *Martin v. Perez*, 319 F.3d 799, 804 (6th Cir. 2003).

4

Therefore, the Respondent requests that the instant petition be dismissed.

<u>PETITIONER'S RESPONSE/REPLY</u>

Petitioner has submitted a timely response to the Respondent's Motion to Dismiss.  See Record No. 14.

Hicks contends that the threshold question for this Court is whether he is challenging his conviction and/or imposition of his original sentence or is challenging the execution of his sentence. Pointing out that his claim is based on events occurring after imposition of his sentence and that he is, therefore, truly challenging the execution of his sentence, not the sentence imposed, Petitioner insist that he is proceeding properly under Section 2241.  He relies on *Cohen v. United States*, 593 F.3d 766, 770 (6th Cir. 1999) and distinguishes the Respondent's *Wingfield* case.

As to the use of the savings clause of Section 2255, Hicks specifically denies that he is attempting to utilize it.  He also asserts that he is entitled to a hearing on his factual assertions. Finally, Petitioner repeats his equal protection argument, and as he did in his original petition, he relies on *United States v. Hawkins*, 274 F.3d 420, 243 (6th Cir. 2001) and *Wade v. United States*, 504 U.S. 181, 185-85 (1992).

<u>DISCUSSION</u>

Petitioner essentially wants a reduced sentence, one to which he claims to be entitled as the benefit of his bargain after giving assistance to the government.  As the Respondent points out, the first question is how he may proceed to obtain this relief judicially.

Federal law provides that "[t]he [district] court may not modify a term of imprisonment once it has been imposed *except that* ... the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal

Procedure." 18 U.S.C. § 3582(c)(1)(B).  Rule 35 is titled, "**Correcting or Reducing a Sentence**,"

and subsection (b) thereof, under which the instant Petitioner brings his claim to this Court via

Section 2241, provides as follows:

> **(b) Reducing a Sentence for Substantial Assistance**.
>
> > **(1) In General.** Upon the government's motion made within one year of sentencing, the court may reduce a sentence if:
> >
> > > **(A)** the defendant, after sentencing, provided substantial assistance in investigating or prosecuting another person; and
> > >
> > > **(B)** reducing the sentence accords with the Sentencing Commission's guidelines and policy statements.[2]
> >
> > **(2) Later Motion.** Upon the government's motion made more than one year after sentencing, the court may reduce a sentence if the defendant's substantial assistance involved:
> >
> > > **(A)** information not known to the defendant until one year or more after sentencing;
> > >
> > > **(B)** information provided by the defendant to the government within one year of sentencing, but which did not become useful to the government until more than one year after sentencing; or
> > >
> > > **(C)** information the usefulness of which could not reasonably have been anticipated by the defendant until more than one year after sentencing and which was promptly provided to the government after its usefulness was reasonably apparent to the defendant.

Fed.R.Crim.P 35(b).

The parties herein disagree on which district court may exercise jurisdiction over the merits

of whether Hicks is entitled to a sentence reduction under Rule 35(b).  To answer this question, the

Court starts with the scope of this Court's Section 2241 jurisdiction, as contrasted with that of the

---

[2]  Effective December 1, 2007, this Rule will be amended to delete subsection (b)(1)(B) because it treats the guidelines as mandatory, in contravention of *United States v. Booker*, 543 U.S. 220, 245-46 (2005).  This anticipated change does not effect the decision herein, however.

trial court, which has jurisdiction over the original conviction and sentence and also over any Section 2255 motion(s) thereafter.

It is true that ordinarily, a federal prisoner must challenge the legality of his conviction or sentence by filing a Section 2255 motion to vacate, set aside or correct the sentence in the trial court (*Capaldi v. Pontesso*, 135 F.3d 1122, 1123 (6th Cir. 2003)), whereas a petition pursuant to 28 U.S.C. § 2241 is used by prisoners to challenge the execution of a sentence, such as the computation of parole or sentence credits, not the legality of the sentence. *See United States v. Jalili,* 925 F.2d 889, 894 (6th Cir. 1999); *DeSimone v. Lacy*, 805 F.2d 321, 323 (8th Cir. 1986) (per curiam); *Cohen*, 593 F.2d at 770-71. Additionally, under certain circumstances, a prisoner may use Section 2241 to press challenges to his or her criminal conviction by showing, pursuant to the "savings clause" at the end of the fifth paragraph of 28 U.S.C. § 2255, that the remedy via Section 2255 is inadequate or ineffective to test the legality of that conviction or sentence.

However, in the instant case, the Petitioner denies that he is attempting to use Section 2241 on the ground that his remedy via Section 2255 is inadequate or ineffective. He insists that he has correctly come to this Court, in the district of his confinement, because he is challenging the execution of his sentence as in *Cohen*, not its imposition as in *Capaldi*. Therefore, consistent with the above-cited case law, he asks this Court to grant him enforcement of his agreement with the United States representatives, which he made after and outside of the trial court which imposed the sentence.

Usually, a motion for a reduction of sentence or motion for downward departure is promised by the government as part of a plea agreement, as the inducement to obtain the defendant guilty plea, and it is entered into the record of the trial court. Such plea bargaining, whereby the defendant gives

up significant rights, "presuppose[s] fairness in securing agreement between an accused and a prosecutor." *Santobello v. New York*, 404 U.S. 257, 261 (1971). "Where a defendant fulfills his promise in entering a guilty plea, the prosecution is bound to fulfill any promise made in exchange." *Id.* at 262.

Accordingly, ample case law has developed which is centered on whether to enforce that portion of a plea agreement which promises a motion for downward departure under the United States Sentencing Guidelines or a later motion for reduction of the sentence under Rule 35(b). The issue in these cases usually arises in the trial court at the time of sentencing when the defendant argues for a promised downward departure or in a later motion to vacate, set aside or amend the defendant's sentence, pursuant to 28 U.S.C. § 2255. Appellate opinions on these claims are therefore commonly issued on appeal of the criminal sentence or the Section 2255 ruling.

Even in the cases upon which the parties primarily rely, the government's promises and the defendant's assistance obligations are both set out in the plea agreement, the very contract between the parties. *Cohen*, 593 F.3d at 770 (petitioner should use Section 2241 for post-sentencing events, such as whether a breach of the plea agreement occurred); *Wingfield*, 2007 WL 145468 at *2 (prisoner was already denied enforcement of the plea agreement in both a Rule 35(b) motion and in a Section 2255 motion and could not use Section 2241 because he had not shown that his remedy via Section 2255 is inadequate or ineffective); *Hawkins*, 274 F.3d at 420 (on appeal of the sentence, promise of downward departure motion was not enforced despite the defendant's total performance, the plea agreement specifically providing that the decision to bring the motion "will lie with the United States and its sole discretion"). *See also Jackson v. Pitzer*, 108 F.3d 1379 (7th Cir. 1997) (unpublished) (construing a Section 2241 petition as a Section 2255 motion and finding that even

if the allegations were true, Petitioner had failed to provide information leading to the indictment or prosecution of his sources -- "the quid pro quo" for the motion, as stated on the face of the plea agreement).

Such is not the case herein, however.  In the case *sub judice* and in a limited number of other cases, there are no plea agreements involved.  Rather, the ex-defendants/now petitioners are in prison when an agreement to provide assistance to the government is entered into.  In *United States v. Friedland*, 879 F.Supp. 420 (D.N.J. 1995),  *affm'd*, 83 F.3d 1531 (3rd Cir. 1996), which is closely on point, an enterprising inmate alleged that while in prison he had made an agreement with a Special Agent of the Drug Enforcement Administration and had later made another one with an Assistant United States Attorney, but that the government officers had reneged on their promises after he provided certain information.  He brought three post-judgment claims to the trial court, *i.e.*, a motion pursuant to Rule 35(b), a motion pursuant to  28 U.S.C. § 2255, and a petition pursuant to 28 U.S.C. § 2241.

Friedland's Section 2241 issue was a parole decision and it alone was properly decided under that Section, as it challenged Friedland's execution of his sentence.  As to his claim of entitlement to sentence reductions pursuant to Section 2255 and Rule 35(b), the trial court addressed both of these claims on the merits and found that in either posture, the prisoner was not entitled to the reduction.  This was because no agreement had been proved, Friedland had suggested no unconstitutional motive on the part of the government, nor had he established that the government's refusal was not rationally related to a legitimate government objective.

On Friedland's appeal, the Third Circuit affirmed the district court.  As to the trial court's authority to grant the sentence reduction under Section 2255 vs. Rule 35(b), the appellate court

footnoted as follows:

> The government points out that, by its terms, section 2255 may not be applicable here, as that section deals with challenges to the sentence "imposed." *See Bennett v. Soto*, 850 F.2d 161, 162-63 (3d Cir.1988); *United States v. Patterson*, 739 F.2d 191, 196 (5th Cir.1984); *United States v. Grimes*, 641 F.2d 96, 99 (3d Cir.1981). Friedland's challenge is not to the original sentence but rather to the government's refusal to move under [] Rule 35(b) for a reduction of sentence. The government also contends that section 2255 is not applicable as Friedland does not advance a claim of such a miscarriage of justice as to justify relief under section 2255. *See United States v. Essig*, 10 F.3d 968, 976-77 (3d Cir.1993). We, however, need not reach these points. Rather, *we will assume without deciding that if Friedland had made a sufficient showing for the granting of relief, section 2255 or new Rule 35(b) would have been available in this case*.

*Id.*, 83 F.3d at 1540 fn. 7 (emphasis added).

A later district court case, also from the District of New Jersey, is even more on point.  In *Garcia v. Beeler*, 1998 WL 418041 (D.N.J. 1998) (unpublished), the district court noted that "the underlying objective of Rule 35 is 'to give every convicted defendant a second round before the sentencing judge, and [afford] the judge an opportunity to reconsider the sentence in light of any further information about the defendant or the case which may have been presented to him in the interim.'" *Id.* at *2 (citing *United States v. Ellenbogen*, 390 F.2d 537, 543 (2nd Cir. 1968)).  Also,

> [I]t is understandable why petitioner would argue that § 2241, rather than § 2255, affords him relief.
>
> Nevertheless, most courts appear to accept that challenges to the government's failure to made a rule 35(b) motion are more properly brought under § 2255.  There are a plethora of cases where prisoners have filed for relief in rule 35(b) situations, and most, if not all, have been decided under § 2255.

*Id.* at *4 (citations omitted).

More recently, in a case arising in this circuit, a prisoner filed a series of post-sentencing motions, all seeking to compel the government to bring the promised motion for a sentence reduction and each citing different authority, in the sentencing court.  In *United States v. Baker*, 39 Fed.Appx.

125 (6th Cir. 2002) (not selected for publication), the district court found that one of his requests, based on 18 U.S.C. § 3553, was clearly improper, as that statute deals with the imposition of his sentence and that was not being challenged, as this was a post-sentencing event. *Id.* at 126. Nor did the issue "involve" Section 2241 or 2255. *Id.* As to the posture of his fourth request, the district court concluded that "Criminal Rule 35(b) was the only possible jurisdictional basis for the motion," a ruling affirmed by the Sixth Circuit. *Id.* at 126-27.

Consistent with the foregoing, in the case *sub judice*, this Court concludes that Hicks' trial court is the only court with jurisdiction to decide Petitioner's claim that he is entitled to a sentence reduction based upon a post-sentencing agreement made with representatives of the United States. This Court expresses no opinion on the chance of success of such a claim if presented in the United States District Court for the Middle District of North Carolina – only that it must be decided by that court. There simply is no authority for this Court to entertain the claim.

<u>CONCLUSION</u>

Accordingly, the Court being advised, **IT IS ORDERED** as follows:

(1)     The Respondent's Motion to Dismiss [Record No. 12] is **GRANTED**.

(2)     Petitioner Shon Demarcus Hicks' petition for writ of habeas corpus is **DENIED**.

(3)     Petitioner's cause of action herein will be **DISMISSED**, and a contemporaneous Judgment shall issue in favor of the Respondents.

This September 26, 2007.



Signed By:

*Henry R Wilhoit Jr.*

**United States District Judge**

11